UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WEB 2.0 TECHNOLOGIES, LLC, et al., | |
| Plaintiffs, | Case No. 23-cv-0230 |
| v. | Judge John Robert Blakey |
| 37SIGNALS LLC., | |
| Defendant. | |

### MEMORANDUM OPINION AND ORDER

Plaintiffs Web 2.0 Technologies LLC and Pennar Software Corporation sue 37signals LLC., d/b/a Basecamp, for infringement of two patents, U.S. Patent No. 6,845,448 and U.S. patent No. 8,117,644. *See* [1], [30]. Defendant has moved to dismiss both claims, *see* [33], arguing that the asserted patents are directed to ineligible subject matter. The Court agrees and grants Defendant's motion.

### I.  Plaintiffs' Allegations

Plaintiffs own all substantial right, title, and interest in U.S. Patent No. 6,845,448, entitled "Online Repository for Personal Information" (the '448 patent), and in U.S. patent No. 8,117,644, entitled "Method and System for Online Document Collaboration" (the '644 patent). [30] ¶¶ 15–18. The asserted patents were filed in, or claim priority to, January 2000 and expired in 2020, years before Plaintiffs sued.

In the operative complaint [30], filed July 11, 2023, Plaintiffs allege that Defendant "directly and jointly (*e.g.*, with its users and customers) infringed at least Claim 1 of the '448 Patent," and "directly and jointly infringed at least Claim 1 of the '644 Patent." *Id.* ¶¶ 22, 44. Claim 1 of the '448 patent claims:

1

> 1. A method for automatically disbursing a first party's personal information to a second party authorized by the first party by transmitting said first party's personal information from a server computer operated by a service provider, said server computer coupled to a database, the method comprising the following steps performed by the server computer:
> establishing an account for the first party with the server computer;
> assigning an identifier to the first party;
> entering the first party's personal information, said first party's personal information comprising at least one of a plurality of information objects;
> receiving, from the first party, assignment of at least one of a plurality of security levels to each information object at any granularity, thereby enabling access to individually selected portions of the first party's personal information by individual receiving parties;
> storing in the database the first party identifier, the information object and the security level assigned to the information object;
> receiving a request, Said request comprising at least the first party identifier;
> in response to the request, selecting a first portion of the first party's personal information objects that could be transmitted to a second party;
> retrieving from the database the selected first portion of personal information objects;
> securely transmitting the retrieved first portion of personal information objects to the second party;
> obtaining a second party identifier;
> if the second party is not authorized to receive the information, recording the second party identifier; and
> rejecting the second party's request for information.

[30-1] at 18. In addition to claim 1, the '448 patent consists of two other claims; claim 2 depends from claim 1, and claim 3 is another independent claim that recites the same method claimed in claim 1, with the addition of limitations relating to an authorization key. *Id.* at 15, 19.

Claim 1 of the '644 patent claims:

> 1. A method for online document collaboration, the method comprising the steps performed by a server computer:

2

>    establishing, on the server computer coupled to the Internet, an account for each of a plurality of users;
>    storing, on the server computer, a document created by a first user;
>    associating a set of access restrictions with the document, said access restrictions including an ability to access the document for modification by one of a first group of users, said first group of users being users whose identities are known to the server computer, receiving, from a second user, a request to modify the document, wherein said request to modify accompanies the second user's identification information;
>    verifying the identity of the second user;
>    permitting the second user to modify the document based on a set of access rights granted to the second user;
>    receiving approval or disapproval for the modifications from one or more users; and
>    storing identifying information of the one or more users who approved or disapproved the modifications to the document.

[30-2] at 25. In addition to claim 1, the '644 patent consists of 10 other claims, all of which depend (directly or indirectly) from claim 1. [30-2] at 25.

Defendant moves to dismiss the infringement claims for both patents under Rule 12(b)(6), arguing that the asserted patents are directed to ineligible abstract ideas and therefore invalid under 35 U.S.C. § 101. *See* [33], [34].

## II. Applicable Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide a "short and plain statement of the claim" demonstrating that relief can be granted, FRCP 8(a)(2), so the defendant has "fair notice" of the claim "and the grounds upon which it rests," *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint must also contain "sufficient factual matter" to state a facially plausible claim to relief—one that "allows the court to draw the reasonable inference" that the defendant committed the alleged

3

misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard "asks for more than a sheer possibility" that a defendant acted unlawfully. *Id.* In evaluating a complaint under Rule 12(b)(6), this Court accepts all well-pled allegations as true and draws all reasonable inferences in the plaintiff's favor. *Id.* This Court need not, however, accept a complaint's legal conclusions as true. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

Patents issued by the Patent and Trademark Office (PTO) are presumed valid, and each claim is presumed valid independent of other claims. 35 U.S.C.A. § 282. Therefore, the "burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity." *Id.* While patent eligibility under 35 U.S.C. § 101 is an issue of law, the associated inquiry "may contain underlying issues of fact." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018) (citing *Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1325 (Fed. Cir. 2016)). Courts may determine patent eligibility on a motion to dismiss only when the factual allegations in the complaint, taken as true, allow the Court to resolve "the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018). In deciding the issue, courts may consider the patent's claim language and its "character as a whole," as well as the patent's written description. *CardioNet, LLC v. InfoBionic, Inc*, 955 F.3d 1358, 1368 (Fed. Cir. 2020). If, on consideration of the Rule 12(b)(6) motion, issues of claim construction arise, the Court must adopt the "non-moving party's constructions" or "resolve the disputes to

4

whatever extent is needed to conduct the § 101 analysis, which may well be less than a full, formal claim construction." *Aatrix*, 882 F.3d at 1125.

### III. Discussion & Analysis

The Patent Act provides that whoever "invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor." 35 U.S.C. § 101. Yet, courts have long recognized three limits on the statutory rule to pre-empt the monopolization of "the basic tools of scientific and technological work," *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (citing *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 566 U.S. 66 (2012)), namely, that the "laws of nature, natural phenomena, and abstract ideas" are not patentable. *Diamond v. Diehr*, 450 U.S. 175, 185 (1981).

Inventions embodying such limitations are not automatically rendered ineligible for patent protection, however; rather, applications of abstract concepts "to a new and useful end" "remain eligible for patent protection." *Alice*, 573 U.S. at 217. Thus, to determine patent eligibility, this Court must first "'determine whether the claims at issue are directed to' a patent-ineligible concept," *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1366 (Fed. Cir. 2018) (quoting *Alice*, 573 U.S. at 217), and, if they are, the Court must then examine the elements of each claim "individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Berkheimer*, 881 F.3d at 1366 (quoting *Mayo*, 566 U.S. at 78–79).

5

### A.   *Alice* Step One — Abstract Idea Analysis[1]

On an eligibility challenge, the Supreme Court instructs that the Court must "first determine whether the claims at issue are directed to a patent-ineligible concept." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016); *Alice*, 573 U.S. at 218.

Defendant argues that both asserted patents are directed to the abstract idea of storing information—namely, "personal information" in the '448 patent and "documents" in the '644 patent. [34] at 6. And storing and controlling access to information "has been practiced by businesses, governments, and even individuals, for centuries." *Id.* Defendant argues that the '448 patent claims "recite steps for storing personal information and determining whether users are authorized to access said personal information"; it argues that the specification "does not disclose any new computer components or technologies for performing these steps" and instead "admits that multiple generic computer components could be used to implement the method." [34] at 8.

---

[1] As a preliminary matter, the Court finds independent claim 1 of both asserted patents representative for purposes of analyzing patentable subject matter eligibility under § 101. Claims may be treated as representative when the patentee "does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim" or upon agreement of the parties to treat a claim as representative. *Berkheimer*, 881 F.3d at 1365. Likewise, claims may be analyzed as "representative" when other claims are "substantially similar and linked to the same abstract idea" of another claim. *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014). Ostensibly, Plaintiff concedes that the claims quoted above are representative. But, even absent agreement, consistent with *Content Extraction*, the Court finds them to be so. With regard to the '448 patent, claim 2 depends from claim 1, and claim 3 recites the method of claim 1, with the addition of an authorization key; the claims thus remain substantially linked to the method recited in claim 1. Similarly, with regard to the '644 patent, claims 2 through 10 depend from claim 1, and claim 11 claims a "server computer system comprising a processor configured to execute the method of claim 1," [30-2] at 25 ('644 patent, Col. 26, lines 57–58); the claims are thus substantially similar and linked to the method of claim 1.

Similarly, Defendant argues that the '644 patent acknowledges the "need for a method and system to 'share information with others either in a controlled manner or with a widespread audience' and 'share information that is restricted as to the number of copies,'" and proposes to solve that problem by allowing "a user to create an online personal library for storage of digital items," where an "item" is described broadly as "any piece of analog or digital information such as a web page, data, a document such as a news article, a word processor document, spread sheet, presentation, e-book, software programs, music, video, movie, a graphical image such as a photograph, a three-dimensional image, or a similar thing," which is done in part "by allowing a 'requester' who meets certain criterion established by the user (e.g., 'the security level of the requester, or security level of a password that the requester provides . . . or other criterion established by the user') to 'view or access a particular portion of the library.'" [34] at 9. Defendant argues that the '644 patent claims "recite steps to determine whether a user may access and modify a document," but the steps, as the specification concedes, may be implemented using "multiple known generic computer components." [34] at 9. As such, the specification "does not disclose any new computer components or technologies for performing" the recited steps. *Id.*

Plaintiffs, on the other hand, argue that the asserted claims are directed to "solving computer-specific problems" and "improving computer functionality" and are thus patent eligible. *See* [38] at 10.

In deciding whether a particular invention constitutes an "abstract idea," courts often "compare claims at issue to those claims already found to be directed to

7

an abstract idea in previous cases." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016). By way of example, "fundamental economic and conventional business practices are often found to be abstract ideas, even if performed on a computer." *Enfish*, 822 F.3d at 1335 (citing *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362–63 (Fed. Cir. 2015)). But "claims 'purporting to improve the functioning of the computer itself,' or 'improving an existing technological process' might not succumb to the abstract idea exception." *Enfish*, 822 F.3d at 1335 (quoting *Alice*, 573 U.S. at 223, 225).

In *Elec. Power Grp., LLC v. Alstom S.A.*, the Federal Circuit held that claims focused upon "collecting information, analyzing it, and displaying certain results of the collection and analysis," fell solidly within the realm of abstract ideas. 830 F.3d 1350, 1353 (Fed. Cir. 2016). More specifically, the court held that: collecting information, "including when limited to particular content (which does not change its character as information)," constitutes an abstract idea; similarly, "analyzing information by steps people go through in their minds, or by mathematical algorithms, without more," remains "essentially mental processes within the abstract-idea category"; and "merely presenting the results of abstract processes of collecting and analyzing information, without more (such as identifying a particular tool for presentation), is abstract as an ancillary part of such collection and analysis." *Id.* at 1343–54 (citations omitted). In such a case, the advancement the asserted claims "purport to make is a process of gathering and analyzing information of a specific content, then displaying the results, and not any particular assertedly

8

inventive technology for performing those functions. They are therefore directed to an abstract idea." *Id.* at 1354.

The same is true here. The invention claimed in the '448 patent purports to improve upon currently available means of storing and disbursing personal information, and the invention claimed in the '644 patent purports to improve upon currently available means of storing and sharing downloadable files such as e-books, pieces of music, graphic images, and the like. Nevertheless, the methods do not appear to advance "any particular assertedly inventive technology for performing those functions" and do not purport to provide "improvements to computer *functionality*" of any technological components that may be a part of this system.

To support its position that the patents are directed to patent-eligible matter, Plaintiff relies heavily upon *Ancora Technologies, Inc. v. HTC America, Inc.*, 908 F.3d 1343 (Fed. Cir. 2018). The plaintiff in *Ancora* sued for infringement of a patent that described and claimed "methods of limiting a computer's running of software not authorized for that computer to run." *Id.* at 1344. On the defendant's motion, the district court dismissed the suit, because it found that the patent's claims were directed to, and ultimately claimed no more than, an abstract idea—namely, "the abstract concept of selecting a program, verifying whether the program is licensed, and acting on the program according to the verification." *Id.* at 1346. But the Federal Circuit reversed. Initially, the court noted that, in cases involving software innovations, the *Alice* inquiry "often turns on whether the claims focus on 'the specific asserted improvement in computer capabilities ... or, instead, on a process that

9

qualifies as an "abstract idea" for which computers are invoked merely as a tool.' " *Id.* at 1347 (quoting *Finjan, Inc. v. Blue Coat System, Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018); *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016)). The court reviewed several decisions illustrating the point.

For example, in *Enfish*, the claims were not directed to an abstract idea "because the claimed self-referential tables improved the way that computers operated and handled data" by allowing "the more efficient launching and adaptation of databases," *Ancora*, 908 F.3d at 1347 (citing *Enfish*, 822 F.3d at 1333, 1336). In *Finjan*, claims to a "behavior-based virus scan" were "directed to 'a non-abstract improvement in computer functionality' having the benefit of achieving greater computer security," *Ancora*, 908 F.3d at 1348 (citing *Finjan*, 879 F.3d at 1304–05). In *Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc.*, claims to a "method for making websites easier to navigate on a small-screen device were not directed to an abstract idea," *Ancora*, 908 F.3d at 1348 (citing *Core Wireless*, 880 F.3d 1356, 1363 (Fed. Cir. 2018)). And in *Data Engine Technologies LLC v. Google LLC*, claims to "a specific method for navigating through three-dimensional electronic spreadsheets" were "not directed to an abstract idea" because the method "provided 'a specific solution to then-existing technological problems in computers and prior art electronic spreadsheets.' " *Ancora*, 908 F.3d at 1348 (citing *Data Engine Technologies*, 906 F.3d 999, 1007–08 (Fed. Cir. 2018)).

Here, the Court finds that the claims at issue remain directed to a "process that qualifies as an 'abstract idea' for which computers are involved merely as a tool,"

10

rather than to "specific asserted improvements in computer capabilities." *Ancora*, 908 F.3d at 1347.

The '448 patent recites a method for automatically disbursing personal information saved on a computer to an approved requester. *See* [30-1]. According to the specification, the invention solves the problem a user faces in having to fill out lengthy personal profile forms every time the user wants to download software, an e-book, a graphical image, or some other file from the Internet. [30-1] at 9. The '644 patent recites a method for online document collaboration that allows users to store downloaded digital items such as those discussed in the '448 patent for reference at a later date. [30-2] at 25. The invention beats the then-available choices for accomplishing this task: printing the web page, downloading the pages to the personal computer, or making a bookmark to enable an easy return to the website for reference at a later date. *Id.* at 13 ('644 patent, Col. 1, lines 23–33).

But the Federal Circuit has held that claims "reciting the collection, transfer, and publishing of data are directed to an abstract idea." *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1315 (Fed. Cir. 2019) (citing *Elec. Power Grp, LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016)). And "the need to perform tasks automatically is not a unique technical problem." *Cellspin*, 927 F.3d at 1316.

In *Core Wireless*, the claimed device "involved launching a summary window to allow small-screen users to quickly access commonly used features of a website"; the defendant argued that the patent was directed to the abstract idea of indexing information, but the federal circuit "determined that the claims were directed to a

11

specific type of index for a specific type of user and so not directed to an abstract idea." *Ancora*, 908 F.3d 1348 (citing *Core Wireless*, 880 F.3d at 1362–63). Relying upon language in the specification claiming that the invention improved "the efficiency of using the electronic device by bringing together 'a limited list of common functions and commonly accessed stored data,' which can be accessed directly from the main menu," the court held that the claims were "directed to an improvement in the functioning of computers" and not to an abstract idea. 880 F.3d at 1363.

But *Core Wireless* involved a device, not a method. As in *Cellspin*, the asserted claims in this case "use generic computer hardware and software components to automate the conventional manual process of transferring data" or saving data downloaded from the Internet; as such, they recite nothing more than "a simple automation of a conventional (manual) process." *Id.* at 1313. The claims thus fail at *Alice*'s step one, and the Court moves on to consider step two.

### B. *Alice* Step Two – Inventive Concept Analysis

At step two of the *Alice* framework, the Court asks whether the claimed elements "individually and as an ordered combination" elevate the abstract idea to an inventive concept. *Alice*, 573 U.S. at 217 (internal quotation marks omitted). If claimed elements or claimed combinations of those elements are "well-understood, routine," and "conventional activity previously engaged in by researchers in the field," they do not amount to an inventive concept. *Mayo*, 566 U.S. at 73.

Significantly, if a patentee adequately alleges plausible, specific, facts demonstrating that the challenged claims recite inventive concepts, it can survive a

12

§ 101 eligibility analysis on a motion to dismiss. *Aatrix*, 882 F.3d at 1126–28. *See also Cellspin*, 927 F.3d at 1317 (noting that "plausible and specific factual allegations that aspects of the claims are inventive are sufficient").

In *Cellspin*, the Federal Circuit reversed the district court's dismissal under *Alice* based upon the step two inquiry. There, Cellspin's complaint included allegations concerning the inventiveness of the claim. *See* 927 F.3d at 1316–1318. For example, Cellspin's allegations acknowledged that "prior art devices included a capture device with built in mobile wireless Internet," but noted that these devices were "'inferior, because the combined apparatus was bulky" and "expensive." *Id.* at 1316. Cellspin also "specifically alleged that its implementation of Bluetooth, using a two-step, two-device structure, was inventive"; that the claimed structure "provided various benefits over prior art systems" and that "its specific ordered combination of elements was inventive." *Id.* at 1316–1318. The court held that such "plausible and specific factual allegations that aspects of the claims are inventive are sufficient" to defeat a motion to dismiss. *Id.* at 1317–1318.

No such allegations exist here. In *Cellspin*, the plaintiff included "specific, plausible factual allegations about why aspects of its claimed inventions were not conventional," 927 F.3d at 1317–1318, but such allegations are utterly absent from Plaintiff's complaint. Indeed, Plaintiff's complaint contains *no* allegations concerning any inventive concept and says nothing about any way in which the methods recited in the claims could be characterized as unconventional. *See* [30].

13

The specifications of both asserted patents do include language identifying existing problems and suggesting that the patented inventions solve those problems; and such language, if supported by factual allegations in the complaint, could potentially demonstrate inventiveness. For example, the '448 patent specification notes that, within the context of online businesses' subscription and related forms, no method currently exists "whereby a user can enter and store his personal information at a single location and selectively authorize it to be distributed to a number of entities." [30-1] at 9 ('448 patent, Col. 1, lines 44–48). Additionally, the specification explains, "there is no method whereby a user can update or make changes to the personal information stored at a single location—whether it is a single server computer or a collection of server computers comprising a distributed system—and cause the changes to be distributed to all persons or entities that need to be notified." *Id.* ('448 Patent, Col. 1, lines 51–56). Further, the specification explains, "there is a need for a system, which allows a classification of information according to a security or other hierarchical class structure and provide the classified information to only those entities that have a need to know or are authorized by a person who owns the information"; there is also a need "for blocking unauthorized access to such personal information, while allowing access by authorized persons with ease." *Id.* ('488 patent, Col. 1, lines 58–65). But the specification provides no factual basis to find that the '448 patent solves these problems in a way that can be described as unconventional, and the complaint provides no factual allegations to demonstrate inventiveness or unconventionality, and thus cannot be read to fill in the blanks.

14

Similarly, the '644 patent explains that users of the Internet who want to download items such as e-books, software programs, pieces of music, graphical images and "other such object that is of interest" and read or refer to them at a later date, can either print the object, download the object to their computers, or create a bookmark for easy return at a later date. [30-2] at 13 ('644 patent, Col. 1, lines 19–32). But each option carries its own set of problems, and a need thus exists "for a method and system to improve the state of the art to address" issues concerning the collection, storage, and sharing of objects downloaded from the web. *Id.* ('644 patent, Col. 1, line 34–Col. 2, line 5). The specification explains that the present invention "allows a user to create an online personal library for storage of digital items" and also that it is "directed toward a method and system for gathering, storing personal information on a server computer and releasing such information to authorized requesters." *Id.* ('644 patent Col. 2, lines 20–21, 42–45). Again, however, the specification then fails to provide a factual basis to find that the patent solves these problems in an unconventional way, and the complaint fails to allege any facts to support inventiveness.

In short, although the specifications do discuss ways in which the patented inventions solve existing problems, they do not demonstrate that the fixes are in any way non-conventional or non-generic. *BASCOM Glob. Internet Services, Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350–51 (Fed. Cir. 2016), teaches that "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces," but the specification language, particularly in the absence of

15

any allegations claiming inventiveness, falls short of suggesting with anything more than speculation that this case fits within *BASCOM*. On the current record, the claims fail to elevate any abstract idea to an inventive concept. As a result, the claims fail at *Alice*'s step two as well.

## IV. Conclusion

For the reasons explained above, the Court finds that the patented subject matter remains ineligible and grants Defendant's motion to dismiss [33]. The dismissal is without prejudice, however, and, to the extent it has a good faith factual and legal basis to do so, Plaintiff may amend its complaint to cure the deficiencies discussed above. If Plaintiff fails to amend by April 15, 2015, this case will be dismissed.

Dated: March 25, 2024

                                        Entered:

                                        John Robert Blakey
                                        United States District Judge